A06A1226. USA PAYDAY CASH ADVANCE CENTER #1, INC. et al. v. EVANS et al.

(637 SE2d 418)

MIKELL, Judge.

On August 6, 2004, plaintiff Ina Claire Evans filed a putative class action against defendants USA Payday Cash Advance Center #1, Inc., and multiple corporate entities (collectively referred to herein as "USA Payday"), all owned by Richard Clay II and his spouse, Angela Clay, also named as defendants, alleging various claims, including USA Payday's extension of "payday" loans to similarly situated customers in Georgia.[1] Evans further alleged that she received money from USA Payday # 1 and made partial payments to it, but the payments were usurious and violated a series of statutory prohibitions. The defendants answered, denying liability and asserting various factual and legal defenses, including the existence of an agreement between the parties to each transaction to resolve disputes by arbitration. The arbitration agreements at issue specifically

---

[1] Plaintiff Paula Shamburger and several unnamed plaintiffs were added to the lawsuit after the trial court granted Evans's motion for leave to amend complaint.

provided that the Federal Arbitration Act ("FAA") governed all disputes that may arise and that all disputes, claims, demands, or controversies would be settled by binding arbitration conducted pursuant to the Rules of the American Arbitration Association ("AAA").

Thirteen months after the complaint was filed, the defendants filed a motion to compel arbitration and stay the proceedings or dismiss the complaint. The trial court denied the motion, finding that the defendants had waived their right to arbitration. The defendants argue in two related enumerations of error that the trial court erred by failing to apply controlling federal law in determining the issue of waiver and by finding, as a matter of law, that the defendants waived their right to arbitration under Georgia law. We disagree.

In *Price v. Drexel Burnham Lambert, Inc.*,[2] the Fifth Circuit Court of Appeals considered the issue of what standard of review to apply to a lower court's conclusion that a party had waived its right to arbitration. It held that such a finding "is a legal conclusion subject to our plenary review, *but* that the findings upon which the conclusion is based are predicate questions of fact, which may not be overturned unless clearly erroneous."[3] Georgia courts have since applied this standard of review, holding that under federal law, whether the trial court was correct in denying a motion to compel arbitration is a question of law, entitled to de novo review.[4]

At the outset, we note that the parties do not dispute that the agreement provides that disputes related thereto should be submitted to arbitration and governed by the rules of the AAA. We held in *Wise v. Tidal Constr. Co.*[5] that

> [s]ection 2 of the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.[6]

---

[2] 791 F2d 1156 (5th Cir. 1986).

[3] (Emphasis in original.) Id. at 1159. Accord *Frye v. Paine, Webber, Jackson & Curtis*, 877 F2d 396, 398 (II) (5th Cir. 1989). See also *Ivax Corp. v. B. Braun of America*, 286 F3d 1309, 1316 (II), n. 18 (11th Cir. 2002) (we review de novo the legal conclusion that a party has waived its right to arbitrate even though lower court's underlying factual conclusions are reviewed under a clearly erroneous standard); *Davis v. Southern Energy Homes*, 305 F3d 1268, 1270 (III) (11th Cir. 2002) ("[w]e review a district court's order denying a motion to compel arbitration de novo") (citations omitted).

[4] *Cash In Advance of Florida v. Jolley*, 272 Ga. App. 282 (612 SE2d 101) (2005) (undisputed that issue of arbitration was governed by the FAA under rules of the AAA).

[5] 261 Ga. App. 670 (583 SE2d 466) (2003).

[6] (Citations and punctuation omitted.) Id. at 673 (1), citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (IV) (C) (103 SC 927, 74 LE2d 765) (1983).

The Eleventh Circuit has held that "despite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration. . . . A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, in so acting, has in some way prejudiced the other party."[7] Similarly, we have held that "[c]onduct of the parties, either or both, may repudiate, waive, or abandon an arbitration clause under the FAA. An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration."[8] Applying these rules to the evidence in the record, we find that the trial court was authorized to conclude that USA Payday waived its right to arbitration.

The record shows that before filing their answer to the complaint, USA Payday requested additional time to file its answer and entered a stipulation extending the time for all defendants, other than Richard and Angela Clay, who had not yet been served, to answer the complaint and to respond to plaintiff's discovery. Defendants then answered the complaint, raising as their third affirmative defense the court's lack of jurisdiction due to plaintiff's agreement to submit her claims to binding arbitration and also including a "reservation of counterclaim."[9] The defendants answered plaintiff's interrogatories, request for documents, and request for admissions. Plaintiff filed a motion for leave to amend her complaint to add a party, which defendants opposed on the merits. The trial court granted plaintiff's motion. Defendants moved for pro hac vice admission of co-counsel from Texas on September 9, 2005,[10] which motion was granted on September 15, 2005. Plaintiffs moved for a scheduling conference regarding the class certification issue and to set a hearing on the issue on September 12, 2005. On the following day, defendants filed their motion to compel arbitration and to stay proceedings in the trial court, as well as their motion and brief for protective order to prevent the plaintiffs from deposing several individuals. Defendants' motion was filed after the case was placed on the court's trial calendar. The record also contains evidence that plaintiffs served notices of deposition on August 30, 2005, after learning that Richard Clay admitted in a deposition in a lawsuit filed by the Industrial

---

[7] (Citations and punctuation omitted.) *S & H Contractors v. A. J. Taft Coal Co.*, 906 F2d 1507, 1514 (III) (11th Cir. 1990) (party moving to compel waived its right to arbitration when it waited eight months from the filing of the complaint to demand arbitration and engaged in discovery during that time).

[8] (Citations and punctuation omitted.) *Wise*, supra at 675 (2).

[9] Richard and Angela Clay's answers raised the arbitration defense but did not reserve the counterclaim.

[10] It appears that the motion was received by the trial court on September 14, 2005.

Labor Commission and Attorney General for the State of Georgia that on the advice of his counsel, he had transferred assets to various Texas corporations to protect his assets.[11]

"The question of what constitutes a waiver of the right of arbitration depends on the facts of each case."[12] In this case, the trial court concluded that the defendants waived their right to arbitration by engaging in actions inconsistent with the right to arbitration, which include: moving to compel arbitration more than a year after the filing of the complaint; extending the time within which to respond and responding to discovery;[13] opposing plaintiffs' motion to amend on the merits; and filing leaves of absences and motions for pro hac vice admissions. The trial court reasoned that the "[d]efendants could have filed a Motion to Compel Arbitration in its first responsive pleadings for a prompt resolution . . . [but] did not demand arbitration until the case was placed on the Court's trial calendar." The trial court also found that "Defendants' delay in seeking arbitration has prejudiced Plaintiffs by causing Plaintiffs to incur the expense of litigation, and by affording Defendant Richard Clay the time to transfer his assets to shield them from judgment."

In reaching its conclusions, the trial court properly applied federal substantive law, relying on *S & H Contractors*,[14] and *Wise*,[15] a state case which relied heavily on several federal cases. Similar to this case, in *Wise*,[16] the defendants raised their right to arbitration as a defense, but nonetheless proceeded to litigate the case.[17] We held that "[the defendant] sought to have both litigation short of trial and arbitration to avoid a jury trial, which is grossly inconsistent with the inherent purpose for arbitration. The federal Act permits 'parties to an arbitrable dispute (to move) out of court and into arbitration as quickly and easily as possible.' "[18] We also noted that while state

---

[11] The record contains quitclaim deeds showing that on August 26, 2004, Clay transferred property to Yaprich Ventures, L.P., the Articles of Incorporation ("AOI") for which were filed on August 11, 2004. Yaprich Ventures, L.P. deeded the property to C3-Clayprop III, a Texas corporation, on September 22, 2004. C3-Clayprop III's AOI were filed on August 11, 2004. It appears that all of these corporations were formed after the filing of the complaint in this action.

[12] *Tenneco Resins v. Davy Intl.*, 770 F2d 416, 420 (B) (1) (5th Cir. 1985), citing *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F2d 405, 408 (I) (5th Cir. 1971) ("[t]he question [of what constitutes a waiver of arbitration] depends upon the facts of each case and usually must be determined by the trier of facts") (citation omitted).

[13] See *Price*, supra at 1160 (1) ("discovery -- whether meaningful or otherwise -- is not available in arbitration, and could properly form the basis for a finding of prejudice").

[14] Supra.

[15] Supra.

[16] Supra.

[17] Id. at 674 (2).

[18] (Punctuation omitted.) Id. at 675 (2), citing *Moses H. Cone Mem. Hosp.*, supra at 22 (IV) (B); *Southland Corp. v. Keating*, 465 U. S. 1, 7 (II) (A) (104 SC 852, 79 LE2d 1) (1984).

cases "do not control in an FAA case, such cases are persuasive as to the purpose and intent of arbitration in general."[19] Therefore, the trial court's consideration of state cases in its order was appropriate, as was its conclusion that defendants waived their right to arbitration.[20] Moreover, we cannot overturn the factual findings underlying the trial court's conclusion because based on the record, we cannot say that they are clearly erroneous.[21]

Defendants' reliance on the United States Supreme Court's opinion in *Buckeye Check Cashing v. Cardegna*[22] is misplaced. In that case, the issue was whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision was void for illegality. The Court affirmed three propositions it had established in previous cases:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.[23]

*Cardegna* held that a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must be decided by the arbitrator.[24] The issue of waiver was not addressed. It follows that *Cardegna* is inapposite.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

---

[19] *Wise*, supra at 675 (2), n. 2.

[20] See also *E. C. Ernst, Inc. v. Manhattan Constr. Co. &c.*, 551 F2d 1026, 1040-1041 (IV) (A) (5th Cir. 1977) (right to arbitration waived where parties to arbitration agreement litigated their dispute for two and a half years before requesting arbitration); *Burton-Dixie Corp.*, supra at 408-409 (I) (right to arbitration waived where party seeking arbitration did not attempt to invoke the arbitration provision and instead proceeded to litigate the dispute); *Phil Wooden Homes, Inc. v. Ladwig*, 262 Ga. App. 792-793 (586 SE2d 697) (2003) (defendants waived their right to arbitration by inconsistent conduct when they asserted a counterclaim and obtained discovery before asserting their right to mandatory arbitration seven months after filing their answer). Compare *Ivax Corp.*, supra at 1314 (I) (C) (no waiver of arbitration found where defendant petitioned the court to compel arbitration under the FAA less than a month after the lawsuit was filed); *Tenneco*, supra at 420-421 (B) (1) (no waiver where although defendant waited almost eight months before moving that proceedings be stayed pending arbitration and participated in discovery, defendant moved to dismiss action, and district court indicated that participation in discovery would be considered to have been taken under compulsion).

[21] See *Price*, supra at 1159; *Frye*, supra.

[22] 546 U. S. 440 (126 SC 1204, 163 LE2d 1038) (2006).

[23] Id. at 1209 (II) (B).

[24] Id. at 1210 (II) (C).

DECIDED AUGUST 24, 2006 —
RECONSIDERATION DENIED OCTOBER 12, 2006 —

*David G. Crockett*, for appellants.
*Jennifer A. Jordan, Roy E. Barnes, John R. Bevis*, for appellees.